IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| RAFQA STAR, LLC,<br><br>                Plaintiff,<br><br>   v.<br><br>GOOGLE LLC,<br><br>                Defendant. | Civil Action No. 6:22-cv-1207<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Rafqa Star, LLC ("Rafqa Star" or "Plaintiff"), for its Complaint against Defendant Google LLC ("Google" or "Defendant"), alleges the following:

**NATURE OF THE ACTION**

1. This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq*.

**THE PARTIES**

2. Plaintiff is a limited liability company organized under the laws of the State of Texas with a place of business at 7215 Bosque Blvd. Ste 159, Waco, Texas 76710.

3. Defendant Google is a Delaware corporation with a physical address at 500 West 2nd Street, Austin, Texas 78701. Google may be served with process through its registered agent, the Corporation Service Company, at 211 East 7th Street, Suite 620, Austin, Texas 78701. Google is registered to do business in the State of Texas and has been since at least November 17, 2006.

4. This Court has personal jurisdiction over Google at least because Google regularly conducts and transacts business, including infringing acts described herein, in this District. Defendant conducts business in Texas, directly or through intermediaries and offer products or

1

services, including those accused herein of infringement, to customers, and potential customers located in Texas, including in the Western District of Texas.

## JURISDICTION AND VENUE

5. This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §101, et seq.

6. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

7. Venue is proper in this judicial district pursuant to 28 U.S.C. §1400(b). Google maintains an established place of business in the state of Texas and the Western District of Texas, specifically, including an office at 500 West 2nd Street, Austin, Texas 78701.

8. Defendant is subject to this Court's specific and general personal jurisdiction pursuant to due process or the Texas Long Arm Statute, because Defendant conducts substantial business in this forum, including: (i) making, using, selling, importing, and/or offering for sale one or more cloud-based applications, but not limited to Google Drive (drive.google.com) and Google Cloud (cloud.google.com), stored and/or hosted on one or more servers owned or under the control of Google; (ii) making, using, selling, importing, and/or offering for sale software for smartphones, tablets, and other computing devices (e.g., laptops, desktops, Chromebooks, etc.); or (iii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to citizens and residents in Texas and in this District.

## BACKGROUND

**The Inventions**

9. Robert Paul Morris is the inventor of U.S. Patent Nos. 11,145,215 (the "'215 patent" or the "patent in suit"), entitled "Methods, Systems, and Computer Program Products for Providing Feedback to a User of a Portable Electronic in Motion." A true and correct copy of the '215 patent is attached as Exhibit 1.

10. The patent in suit resulted from the pioneering efforts of Mr. Morris (hereinafter, the "Inventor") in the area of augmented reality, and more particularly of augmented reality using mobile devices. These efforts resulted in the development of methods and systems for presenting information to a mobile device user based on the user's current location and detected movement, early as 2011.

11. The patent in suit describes methods and systems for detecting movement of a portable electronic device ("PED"); receiving video data for a first object captured by a video capture device during the movement; and utilizing the video data to present a video, using the portable electronic device, to a user for directing the attention of the user in connection with the first object. (*See* '215 patent at Abstract; 2:20-26.)

12. Specifically, the patent in suit describes methods and systems to detect that a PED is in motion; detect an interaction between a user and the PED during the motion; receive image data, for a first object, captured by an image capture device during the motion; and send, in response to both detecting the interaction and detecting the motion, the image data for presenting an image of the first object by a display device that is viewable to the user during the motion. ('215 patent at Fig. 2.)

13. For example, the patent in suit describes that the process of providing feedback to a user of the PED may comprise motion monitor component, an interaction monitor component, a capture manager component, and an attention director. ('215 patent at Fig. 3.)

14. The patent in suit describes that the process of monitoring motion may include using an accelerometer ('215 patent at 12:42-44), detecting an electromagnetic signal from another object (*id.* at 12:54-56, 14:14-17), determining a relative path of movement between two PEDs (*id.* at 13:11-15), transmitting an electromagnetic signal (*id.* at 13:26-28), detecting the end

of physical contact between the PED and another object (*id.* at 14:24-27), detecting coming into and/or ending other types of contact such as communications contact (*id.* at 14:47-51), detecting a change in sound (*id.* at 14:56-58), detecting a change in a measure of heat from another object (*id.* at 15:9-11), receiving data from one or more pedometers (*id.* at 15:39-43), detecting a wind speed and/or wind direction (*id.* at 33:21-22), detecting a difference in pressure between two portions of an external surface (*id.* at 33:30-33), or receiving a message from another device identifying the motion (*id.* at 33:43-45).

15. The patent in suit further describes that the process of detecting an interaction between a user and the PED may include receiving interaction information via a hardware interrupt in response to insertion of a smart card in a smart card reader (*id.* at 18:26-29), receiving interaction information in a message via a network or from another PED (*id.* at 18:48-50, 19:43-47), based on a lack of input detected by an input device and/or by detecting attention directed to an activity and/or object not included in operating the PED (such as an external sensor) (*id.* at 20:10-13, 21:3-5, 21:43-45, 22:15-19, 24:11-14), detecting an input from the user of the PED (*id.* at 33:52-54), or receiving an input for sending data to a node via a network and receiving data, from the node, for presenting a user detectable output by the PED (*id.* at 33:63-65).

16. The patent in suit further describes that the process of receiving image data of a first object captured by an image capture device during the motion may include continuously and/or automatically receiving image data (*id.* at 25:23-26), in response to an instruction from another component (*id.* at 25:39-41), or sending a request to retrieve the image data and receiving the image data in response to the request (*id.* at 25:60-62).

17. The patent in suit further describes that the process of sending, in response to both detecting the interaction and detecting the motion, the image data for presenting an image of the first object by a display device that is viewable to the user during the motion, may include sending image data in a message via a network, a communications interface, an invocation mechanism, an interprocess communication mechanism, a register of a hardware component, a hardware interrupt, or a software interrupt (id. at 27:35-40).

18. The patent in suit further describes that the above steps may be performed during special times, identified by temporal information, based on an attribute, such as size, of an object in motion relative to the PED; based on a particular ambient condition, such as rain or snow that require a user be more attentive to objects other than the PED; a user's experience in using the PED and/or a feature of the PED; or a user's physical and/or mental capabilities or other limitations. (*Id.* at 31:27-38.)

19. The claims of the patent in suit recite the above and other inventive concepts that improve the functioning of augmented reality technologies for presenting information to a mobile device user based on the user's current location and detected movement, particularly because they describe systems in which elements are configured to cooperate to provide information to a user of a PED based on several ways of detecting motion and user interactions with the PED, causing to be output visual information, based on particular location-relevant information that is, in turn, based on at least one detected movement and one type of interaction.

20. The claims of the patent in suit do not merely recite the performance of some well-known business practice from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claims of the patent in suit recite inventive concepts that are deeply rooted in engineering technology, and overcome problems specifically arising out of

presenting useful location-relevant information to a user of a PED based on a detected motion and an interaction with the PED.  The claims of the patent in suit therefore implicate many augmented reality technologies and applications currently offered by providers of mobile devices, mobile operating systems, and location-based services, such as Google.

21. Moreover, the claims of the patent in suit recite inventive concepts that are not merely routine or conventional use of network communications with mobile devices.  Instead, the inventions claimed in the patents in suit provide a new and novel solution to specific problems related to improving augmented reality technologies.

22. And finally, the inventions claimed in the patents in suit do not preempt all the ways that motion detection or user interactions may be used to improve the presentation of augmented reality data via a mobile device, nor does the patent in suit preempt any other well-known or prior art technology.

23. Accordingly, the claims in the patent in suit recite a combination of elements sufficient to ensure that the claim in substance and in practice amounts to significantly more than a patent-ineligible abstract idea.

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 11,145,215

24. The allegations set forth in the foregoing paragraphs 1 through 23 are incorporated into this First Claim for Relief.

25. On October 12, 2021, the '215 patent was duly and legally issued by the United States Patent and Trademark Office under the title "Methods, systems, and computer program products for providing feedback to a user of a portable electronic in motion."

26. Rafqa Star is the assignee and owner of the right, title and interest in and to the '215 patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

27. Upon information and belief, Google has and continues to directly infringe one or more claims of the '215 patent by making, using, and/or providing and causing to be used the Google Live View feature within the Android operating system, along with associated hardware and/or software, including but not limited to Google's back-end servers and related computer systems operated by Google that work in conjunction with the Google Live View feature (the "Accused Instrumentalities").

28. Upon information and belief, the Accused Instrumentalities perform at least the method claimed in claim 1 of the '215 patent. (*See* '215 patent at 36:2-12.)

29. Exemplary infringement analysis showing infringement of claim 1 of the '215 patent is set forth in Exhibit 2. This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by Google with respect to the '215 patent. Rafqa Star reserves all rights to amend, supplement and modify this preliminary infringement analysis. Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '215 patent.

30. The Accused Instrumentalities infringed and continue to infringe at least claim 1 of the '215 patent during the pendency of the '215 patent.

31. Rafqa Star has been harmed by Google's infringing activities.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Rafqa Star demands a trial by jury on all issues triable as such.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Rafqa Star demands judgment for itself and against Google as follows:

A. An adjudication that Google has infringed the patent in suit;

  B. An award of damages to be paid by Google adequate to compensate Rafqa Star for Google's past infringement of the patents in suit, and any continuing or future infringement through the date such judgment is entered, including interest, costs, expenses and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

  C. A declaration that this case is exceptional under 35 U.S.C. § 285, and an award of Rafqa Star's reasonable attorneys' fees; and

  D. An award to Rafqa Star of such further relief at law or in equity as the Court deems just and proper.

Dated: November 18, 2022      DEVLIN LAW FIRM LLC

              */s/Derek Dahlgren*
              Derek Dahlgren
              ddahlgren@devlinlawfirm.com
              Srikant Cheruvu (*pro hac vice* to be filed)
              scheruvu@devlinlawfirm.com
              Devlin Law Firm
              1526 Gilpin Avenue
              Wilmington, Delaware 19806
              Telephone: (302) 449-9010
              Facsimile: (302) 353-4251

              *Attorneys for Plaintiff Rafqa Star, LLC*