**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **RAFQA STAR, LLC,** | § | |
| *Plaintiff* | § | |
| | § | **6-22-CV-01207-ADA** |
| **-vs-** | § | |
| | § | |
| **GOOGLE LLC,** | § | |
| *Defendant.* | § | |
| | § | |

## <u>SEALED ORDER DENYING DEFENDANT'S MOTION TO TRANSFER</u>

Came on for consideration this date is Defendant Google LLC's ("Google") Motion to Transfer Venue to the Northern District of California. ECF No. 32 (the "Motion"). Plaintiff Rafqa Star, LLC ("Rafqa") filed an opposition to the Motion on June 7, 2023 (ECF No. 49), to which Google replied on June 21, 2023. ECF No. 51. After careful consideration of the briefs and applicable law, Google's Motion is **DENIED**.

### I.   FACTUAL BACKGROUND

Rafqa originally filed suit against Google on November 18, 2022. ECF No. 1. On February 21, 2023, Rafqa filed an amended complaint against Google alleging that Google's Navigate with Live View feature of Google Maps, along with "associated hardware and/or software" that "work in conjunction with" the Navigate with Live View feature of Google Maps infringe U.S. Patent No. 11,145,215 ("'215 Patent"). ECF No. 25 ¶ 27.

Rafqa is a Texas limited liability company. *Id.* ¶ 2. It has a place of business at 7215 Bosque Blvd. Ste 159, Waco, Texas 76710. *Id.* Rafqa has a single member and manager, Mr. Andrew Gordon, who works in both Rafqa's Waco office and his home office in Frisco, Texas. ECF No.

48-3 ¶¶ 2, 5, 8. The latter is located in the Eastern District of Texas ("EDTX") and only a short drive from this Court. *Id.* ¶¶ 7, 8, 9.

Defendant Google is a Delaware corporation with a physical address at 500 West 2nd Street, Austin, Texas 78701. ECF No. 25 ¶ 3. Google may be served with process through its registered agent, the Corporation Service Company, at 211 East 7th Street, Suite 620, Austin, Texas 78701. *Id.* Google is registered to do business in the State of Texas and has been since at least November 17, 2006. *Id.*

## II.     PROCEDURAL BACKGROUND

In support of its Motion, Google filed the declaration of Mr. Peter Tan, a Senior Staff Software Engineer and Technical Lead and Manager of the AR Experiences team who works on Navigate with Live View and reports to Google's Mountain View office. *See* ECF No. 32-1 ("Tan Declaration"). The Tan Declaration represents the only declaration from a Google employee in support of Google's Motion to transfer venue. For both Google's opening brief and its reply brief, Google also relied on the declarations of Ms. Stacy Yae, counsel for Google at O'Melveny & Myers LLP. *See* ECF Nos. 32-2, 52-1.

Upon reviewing the declarations, the Court noticed many discrepancies and vague assertions that appeared to be unreliable.

***First***, Ms. Yae submitted a declaration regarding Stephanie L'Ecuyer, an Engineering Program Manager at Google. *See* ECF No. 52-1. Ms. L'Ecuyer was first identified by Rafqa as a current Google employee that appears to have relevant knowledge and be in this District. To support this contention, Rafqa submitted a printout of Ms. L'Ecuyer's LinkedIn page on April 23,

2023,[1] that indicates that Ms. L'Ecuyer is located in Austin, Texas. *See* ECF No. 65. Yet two months later, on June 21, 2023, Google submitted in reply that Ms. L'Ecuyer "does not appear in Texas" because Ms. Yae declares that Ms. L'Ecuyer's LinkedIn now shows her in the "San Francisco Bay Area" as of June 20, 2023. ECF No. 52-1. But when the Court identified the discrepancy between these two LinkedIn locations of Ms. L'Ecuyer on July 21, 2023, Google submitted a declaration from Stephanie L'Ecuyer that in October 2022, she "moved from Austin, Texas to Park City, Utah[, and] [s]ince then, I have worked remotely from Park City, Utah." ECF No. 60 ¶ 10.[2] The Declaration of Ms. L'Ecuyer goes on to further state that in "June 2023, I decided to update my LinkedIn profile to reflect my current status. Specifically, I decided to change the location that appears under my name in my profile from 'Austin, Texas' to 'San Francisco Bay Area.' I made this change on my own and without any input from anyone. I made this change because I no longer worked in Austin, Texas and ███████████████████████████████ ████████████████████████████" *Id.* ¶ 11. And Ms. L'Ecuyer also states that prior to July 20, 2023, she "was not aware of this case." *Id.* ¶ 12.

**Second**, Mr. Peter Tan, Senior Staff Software Engineer at Google, and Google's lead employee declarant regarding the location of relevant Google employees working on the accused technology. Mr. Tan's Declaration, however, is ambiguous about the location of these employees. Specifically, the Tan Declaration identifies the names of people who "report to" Google's offices in the NDCA, but this term is inconclusive. *See, e.g.*, ECF No. 32-1 ¶ 3. "Reports to" does not necessarily mean "physically based at," "working from a physical office at," "located at," or even

---

[1] Rafqa originally stated that the LinkedIn page was obtained on June 7, 2023. ECF Nos. 48, 48-14. On July 24, 2023, Rafqa submitted a corrected declaration that stated that the LinkedIn page was obtained on April 23, 2023.

[2] Ms. Yae actually drafted the Declaration. ECF No. 72 at 14:17–20.

"present at." *See* ECF No. 48-32. It has a range of meanings, primarily denoting hierarchical structures of authority and accountability. *See id.* Critically, Mr. Tan uses "report" in what appears to be both senses of the word and even in the same sentence. *See, e.g.*, ECF No. 32-1 ¶ 5. For example, Mr. Tan states that a Google employee, Mr. Shin, "reports to Google's Mountain View office. His team comprises 6 employees who directly report to him, of which 5 report to one of Google's Northern California offices and 1 reports to Google's Austin, Texas office." *See id.* Curiously, Mr. Tan states that his office is in located in the NDCA but fails to identify where any of the other employee witnesses' offices are. *See generally* ECF No. 32-1.

On July 25, 2023, the Court held an in-person hearing to have the above declarants testify as to these declarations and the discrepancies identified above. ECF Nos. 66, 71–72. At the hearing, the Court allowed both declarants, Ms. Yae and Mr. Tan, to testify. *See id.* During the hearing, the Court was able to assess the credibility of both witnesses. Based on that in-person assessment of credibility, the Court found the witnesses to be unreliable for the reasons outlined below.

### III.    LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit—here, the Fifth Circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). 28 U.S.C. § 1404(a) provides in part that "[f]or the convenience of parties and witnesses, . . . a district court may transfer any civil action to any other district or division where it might have been brought . . . ." *Id*. "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The preliminary question under § 1404(a) is whether a civil action "'might have been brought' in the destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) [hereinafter *Volkswagen II*]. If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004) (footnote omitted). The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) [hereinafter *Volkswagen I*] (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.*

Defendants should expect and accept some inconvenience when haled into Court. *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022). The burden that a movant must carry is not that the alternative venue is more convenient, but that it is *clearly* more convenient. *Volkswagen II*, 545 F.3d at 314 n.10. Although the plaintiff's choice of forum is not a separate factor entitled to special weight, respect for the plaintiff's choice of forum is encompassed in the movant's elevated burden to "clearly demonstrate" that the proposed transferee forum is more convenient than the forum in which the case was filed. *Id.* at 315. "[T]he standard is not met by showing one forum is more likely than not to be more convenient, but instead the party must adduce evidence and arguments that clearly establish good cause for transfer based on convenience

and justice." *Def. Distributed*, 30 F.4th at 433. While "clearly" more convenient is not necessarily equivalent to the "clear and convincing" evidence standard, the moving party "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019).

## IV.   DISCUSSION

The threshold determination in the § 1404(a) analysis is whether this case could initially have been brought in the destination venue—the NDCA. *See Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen) Tech., Ltd.*, No. 6:20-CV-00876-ADA, 2022 WL 958384, at *5 (W.D. Tex. Mar. 25, 2022). Neither party contests that venue could be proper in the NDCA. *See* ECF No. 32 at 6; *see generally* ECF No. 49. This Court therefore finds that venue would have been proper in the NDCA had the suit originally been filed there. Thus, the Court now analyzes the private and public interest factors to determine whether the NDCA is a clearly more convenient forum than the WDTX.

### A.  The Private Interest Factors

#### i.    *The Cost of Attendance and Convenience for Willing Witnesses*

The most important factor in the transfer analysis is the convenience of the witnesses. *In re Genentech, Inc.*, 566 F.3d 1388, 1342 (Fed. Cir. 2009). According to Fifth Circuit law, if the distance between a current venue and a proposed venue is more than 100 miles, the inconvenience to witnesses increases in direct relationship to the additional distance they must travel if the matter is transferred. *Volkswagen II*, 545 F.3d at 317. But it is unclear when the 100-mile rule applies, as the Federal Circuit has stated that courts should not apply the rule "rigidly" in cases where witnesses would be required to travel a significant distance no matter what venue they testify in.

6

*In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York) (citing *Volkswagen II*, 545 F.3d at 317). "[T]he inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google, LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021). According to the Federal Circuit, time is a more important metric than distance. *Id.* But the Federal Circuit has also held that when willing witnesses will have to travel a significant distance to either forum, the slight inconvenience of one forum in comparison to the other should not weigh heavily on the outcome of this factor. *In re Apple*, 979 F.3d at 1342. When analyzing this factor, the Court should consider all potential witnesses. *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-CV-00693, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017).

The Court holds that this factor weighs against transfer because Google's declarants regarding willing witnesses, Mr. Tan and Ms. Yae, are not credible.[3] Rafqa has therefore shown that more relevant willing witnesses would find this District more convenient.

    i.    Google witnesses identified by Google

Google argues that this factor favors transfer because "Google has thus far identified fourteen potential witnesses." ECF No. 32 at 9. According to Google, "eleven are based in N.D. Cal., two are based in New York, and one is based in Texas." *Id.* Google contends that "the one person in Texas has no unique relevant knowledge and is unlikely to testify." *Id.* In support of this contention, Google relies on the Tan Declaration. As discussed above, because the Tan Declaration ambiguously uses the term "reports to," the Tan Declaration identifies only one person by name located in the NDCA. *See generally* ECF No. 32-1 ("My office is at Google's headquarters, which

---

[3] The credibility determination of these two witnesses herein relates solely to this Motion and does not reflect on these witnesses personally or professionally.

is located in Mountain View, California"). For every single one of the other employees that Google argues as being in NDCA, Mr. Tan refers to them in his declaration that they ambiguously "reports to" one of Google's offices in NDCA. *See* ECF No. 32-1 ¶ 5 ("Mr. Shin reports to Google's Mountain View office"), ¶ 6.b ("Mr. McDonald reports to Google's San Francisco office"), ¶ 6.c ("Ms. Li reports to Google's Mountain View office"), ¶ 9.a ("Mr. Gorecki reports to Google's Mountain View office"), ¶ 9.b ("Mr. Lai reports to Google's Mountain View office"), ¶ 9.c ("Mr. Quimby reports to Google's Mountain View office"), ¶ 9.d ("Mr. Toh reports to Google San Francisco office").[4] Although Google contends that there are eleven witnesses with knowledge about the accused functionality in the NDCA, Mr. Tan is only able to identify seven that "report to" Google's offices in the NDCA aside from himself. Because Mr. Tan does not identify the remaining three witnesses, the Court finds that Google is contending that there are eight witnesses in the NDCA.

The Court finds, that besides identifying himself as being located in the NDCA, Mr. Tan's Declaration is unreliable and must be excluded. And, as explained below, his testimony before this Court was marked with inconsistencies and highlights the clear inability of Google and its counsel to investigate Google's own employees. First, the Court notes that Mr. Tan is unreliable for at least the reason that his use of the term "reports to" is ambiguous as to whether the employee is located in the NDCA. Second, even if Mr. Tan meant to say that each of these employees is located in the NDCA, the Court finds his testimony on this point not credible. Indeed, at the hearing, Mr. Tan was asked a question by Rafqa's counsel whether "all Google employees that report to an office in the San Francisco area or Mountain View area live in California?" ECF No. 72 at 29:20–22.

---

[4] Mr. Tan also identifies several witnesses that report to Google's NY office. *See* ECF No. 32-1 ¶ 9.e ("Mr. Le currently reports to Google's New York office"), ¶ ("Ms. Inman currently reports to Google's New York office").

Mr. Tan Responded that "[b]y the design, *I believe so*." *Id.* at 29:23 (emphasis added). After stating that he had personal knowledge whether all the individuals he identified as reporting to an office California permanently reside in California, Mr. Tan was asked the basis for that knowledge. *Id.* at 29:25–30:4. According to Mr. Tan, the basis for his personal knowledge is that "I meet them personally" and that "[w]e have, you know, weekly meetings or monthly sync up and we meet in office to conduct a meeting and testing." *Id.* at 72:5–8. That Mr. Tan has met the identified employees personally is of no moment in determining whether they are located in the NDCA. *See id.* Moreover, that Mr. Tan has had "weekly meetings" or "monthly sync up[s]" where they "meet in [sic] office" is not persuasive to the Court in determining the location of these witnesses. *See id.* The Court finds that it is just as likely that all these employees are remote employees that fly into the NDCA for a meeting with Mr. Tan. Mr. Tan cannot demonstrate any persuasive support for his personal knowledge that these employees are actually permanently located in the NDCA.

More troubling, however, are Google's attempts to limit the scope of relevant information to the AR walking navigation feature of Google Maps ("ARWN") and to exclude AR Core and Street View. ECF No. 49-2 at 10. For AR Core, Google claims it is "irrelevant" and refused to provide information on it during discovery. *Id.* ("ARCore is not relevant to any issues . . . ."). Google's reply argues that AR Core is not accused or mentioned in the complaint. ECF No. 51 at 2. At the hearing, Mr. Tan testified AR Core was not part of "navigate with live view" and is an "independent" product. ECF No. 72 at 26:23–27:3.

The Court finds Google's arguments to be baseless, and Mr. Tan's testimony lacks credibility. Immediately after testifying AR Core is an "independent product," Mr. Tan admitted that ARWN "depends on" AR Core's basic features and capabilities. *Id.* at 27:3–10, 29:2–5.

Google's own documents state the ARWN feature on Google Maps requires AR Core to work.[5] Contrary to Google's misleading statements, (ECF No. 73 at 3), Rafqa's infringement contentions cite documents stating the accused devices "must be compatible" with AR Core to work. ECF No. 25-2 at 4. Google's attempt to exclude AR Core from the case and relevant evidence and witnesses located in the WDTX from the transfer analysis based on incorrect and misleading statements is improper. ECF No. 72 at 27:3–10, 29:2–5. The same is true of Street View, which is identified as a core component of ARWN in Rafqa's Claim Charts. *See* ECF No. 25-2. ARWN uses Street View features to function and is only available in locations where Street View is available.[6] Mr. Tan also testified that "as an end user, you can walk around in the street view . . . ." ECF No. 72 at 32:13–16. The Court finds that Google's argument that StreetView is not relevant is baseless. Google is trying to limit the scope of relevant information to avoid the clear connections of this case to the WDTX.

Mr. Tan's testimony lacks credibility for other reasons. Mr. Tan testified that no testing of ARWN was performed in Texas. *Id.* at 31:8–10. But afterward he admitted that Mr. Wang participated in testing in Austin. *Id.* at 33:7–12. Mr. Tan admitted that Mr. Wang was one of the individuals responsible for signing off on testing milestones for ARWN. *Id.* at 33:1–14. Google's claim that Mr. Tan comprehensively identified all relevant witnesses is wrong. *See* ECF No. 51 at 2.; ECF No. 72 at 20:19–21:4. In 2020, the ARWN design team included Matt Simpson, Mike Humphrey, Tais Bishop, Alex Jacobo-blonder, Joost Korngold, Kasey Klimes, and Ashley Proctor, who were not mentioned by Mr. Tan.[7] Mr. Tan's testimony also contradicts Google's

---

[5]https://support.google.com/maps/answer/9332056?hl=en&co=GENIE.Platform%3DAndroid, accessed August 7, 2023. Cited in ECF No. 25-2 at 4.

[6]   https://support.google.com/maps/answer/9332056?hl=en&co=GENIE.Platform%3DAndroid, accessed August 7, 2023. Cited in ECF No. 25-2 at 4.

[7] *See* https://www.idesignawards.com/winners/zoom.php?eid=9-32414-2.

assertion. He identified Suzy Lee, Ryan Fuller, and Desmond Shawareb that were not disclosed in his declaration. ECF No. 72 at 21:19–25. The Court finds that Google's argument that they were identified is baseless, (ECF No. 73 at 2), and a separate ground for denial of its Motion.

Accordingly, the Court strikes the portions of Mr. Tan's declaration and testimony that contend that these employees are located in the NDCA and would find travel there more convenience. The Court also finds that, for similar reasons, the other portions of Mr. Tan's declaration or testimony that identify other witnesses (*e.g.*, the witnesses located in New York) should be struck because Mr. Tan is not a reliable or credible witness for the reasons identified above.

ii.     Witnesses identified by Rafqa

In response to Google's Motion, Rafqa argues that this factor favors this District. *See* ECF No. 49 at 8. According to Rafqa, "Google's eight employees [do] not tip the scale in favor of transfer because Mr. Gordon, the sole member and manager of Rafqa is located about two hours from the Court in Texas . . . . and Rafqa's patent prosecution counsel, Mr. Patrick Caldwell, also resides in Texas . . . along with at least five of Google's employees (including Mr. Wang, who Google represents has duplicative knowledge of the other identified individuals)." *Id.* at 10 (citing ECF No. 48-3 ¶¶ 2, 9; ECF No. 48-1 ¶ 3). Specifically, Rafqa contends that the following "current and former Google employee witnesses located in this District that appear to have relevant knowledge and may be called at trial." *Id.* at 4.

1. Brian Klinger, Principal Software Engineer, previously Senior Staff Software Engineer on the Street View team.

2. Ningyuan Wang, Senior Software Engineer at Google, formerly on the Augmented Reality Team.

3. Bilawal Sidhu, former Senior Product Manager, Immersive View Google Maps.

4. Nick DeMuse, current Product Strategy Lead for Google Maps.

5. Stephanie L'Ecuyer, current Engineering Program Manager for Google Maps.

6. Feng Zheng, current Team Lead of Maps SDK for Android.

7. Alan Lopez, current Google Maps software engineer.

8. Syamantak Kumar, former Google software engineer ARCore applications.

*Id.*

In reply, Google argues that "Rafqa's list is not based on verified discovery, but on LinkedIn searches, which only show that these seven had some involvement with Google Maps—which has many features, only one of which is accused in this case: the Navigate with Live View feature of Google Maps Live View—but none on the accused feature, which the Tan Declaration confirms." ECF No. 51 at 2. Importantly, in a footnote, Google argues that "one (Stephanie L'Ecuyer) does not appear to work in Texas and two (Bilawal Sidhu and Syamantak Kumar) appear to no longer work at Google." *Id.* at n.1. To support this contention, Google (through its counsel Ms. Yae) uses exactly the same method that they just criticized Rafqa of doing to find the location of witnesses—***LinkedIn***. *See, e.g.*, ECF No. 52-1 (a capture of the LinkedIn Profile of Ms. Stephanie L'Ecuyer). But as explained in-part above, the Court finds that the circumstances surrounding the location of Ms. L'Ecuyer are suspicious and the representations by Google in its reply brief warrant finding Ms. Yae not credible for the reasons below.

The Court finds that Google incorrectly and misleadingly suggested that Ms. L'Ecuyer was located in the NDCA. ECF Nos. 52, 52-1, 51 at 2. Google's counsel, Stacy Yae, relied on a LinkedIn profile that listed San Francisco even though Rafqa had filed a copy listing identifying

Texas.[8] At the hearing, Ms. Yae admitted she did not investigate Ms. L'Ecuyer's location despite the discrepancy. She testified that was unnecessary because she believed Ms. L'Ecuyer did not have relevant information. ECF No. 72 at 11:4–15. Like the suggestion Ms. L'Ecuyer works in the NDCA, Google's explanation for not investigating her actual location lacks support. Google submitted a declaration from Ms. L'Ecuyer shortly before the hearing ***that Ms. Yae drafted***. *See* ECF No. 60; ECF No. 72 at 14:17–20 ("I drafted this declaration after I spoke with Ms. L'Ecuyer."). Ms. Yae testified that it confirmed her belief. ECF No. 72 at 14:13–16, 15:11–15. But, as Ms. Yae admitted, the declaration does not say Ms. L'Ecuyer lacks relevant knowledge. *Id.* at 15:24–16:10. The declaration could have easily stated as much were that true. Google is not entitled to that inference.

As to the witnesses identified by Rafqa, although the Court finds Ms. Yae not credible and discounts any representations she has made to this Court relating to the present Motion, the Court finds that Ms. L'Ecuyer is not present in either the WDTX or NDCA and instead resides in the District of Utah. ECF No. 60 ¶ 10. Ms. L'Ecuyer is therefore neutral as to this factor. As to the other witnesses identified by Rafqa, the Court finds that the following witnesses are relevant and located in this District:

(1) Brian Klinger, previously Senior Staff Software Engineer on the Street View team, is relevant and located in this District;[9]

---

[8] Although Rafqa initially stated that its copy was downloaded on June 7, 2023, Rafqa investigated the discrepancy and realized the copy it submitted was downloaded in April 2023, which is consistent with the length of time Ms. L'Ecuyer is employed by Google in the two exhibits. See ECF No. 65. This makes it even more remarkable that Ms. L'Ecuyer happened to update her LinkedIn profile in June.

[9] Nowhere in its Reply Brief or Supplemental Brief does Google sufficiently rebut the relevance of Mr. Klinger.

(2) Ningyuan Wang, Senior Software Engineer at Google, formerly on the Augmented Reality Team;[10]

(3) Nick DeMuse, current Product Strategy Lead for Google Maps;[11]

(4) Feng Zheng, current Team Lead of Maps SDK for Android;[12] and

(5) Alan Lopez, current Google Maps software engineer.[13]

And as to the relevant willing witnesses that are identified by Rafqa that would find this District more convenient than the NDCA, Rafqa also identifies Andrew Gordon, its single member and manager, who works in both Rafqa's Waco office and his home office in Frisco, Texas. Gordon Declaration ¶¶ 2, 5, 8. Rafqa also identifies Mr. Patrick Caldwell, the attorney responsible for prosecuting the patent in suit, in Dallas, Texas. Caldwell Decl. ¶¶ 5, 11. The parties treat Mr. Caldwell as a willing witness (*see, e.g.*, ECF No. 73 at 2) and the Court will also treat him as such. Finally, Rafqa identifies the inventor, Robert Paul Morris, as being located in North Carolina. The parties also treat Mr. Morris as a willing witness (ECF No. 73 at 2).

In sum, the Court finds that Rafqa has identified at least seven willing witnesses for whom this District would be more convenient than the NDCA. Other witnesses identified by Rafqa will be examined below under the compulsory process factor.

---

[10] As explained above in finding Mr. Tan not credible, Mr. Tan at least admitted that Mr. Wang was relevant by stating that Mr. Wang participated in testing in Austin. *Id.* at 33:7-12. Mr. Tan also admitted that Mr. Wang was one of the individuals responsible for signing off on testing milestones for ARWN. *Id.* at 33:1-14.

[11] Nowhere in its Reply Brief or Supplemental Brief does Google sufficiently rebut the relevance of Mr. DeMuse.

[12] Nowhere in its Reply Brief or Supplemental Brief does Google sufficiently rebut the relevance of Mr. Zheng.

[13] Nowhere in its Reply Brief or Supplemental Brief does Google sufficiently rebut the relevance of Mr. Lopez.

iii.        Conclusion

In sum, Rafqa has identified at least seven willing witnesses for whom the WDTX would be more convenient than the NDCA. By contrast, because both of Google's declarants have been struck for lack of credibility for the above reasons, the Court finds that there is only one relevant witness actually located in the NDCA—Mr. Tan. Because Rafqa has identified at least seven witnesses for whom the WDTX is more convenient and Google has identified only one witness for whom the NDCA is more convenient, the Court finds that this factor weighs against transfer to the NDCA.

**ii.     *The Availability of Compulsory Process to Secure the Attendance of Witnesses***

Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii). Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order." *Fintiv Inc.*, 2019 WL 4743678, at *14 (citing *Volkswagen II*, 545 F.3d at 316). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple*, 581 F. App'x 886, 889 (Fed. Cir. 2014) (citing *In re Genentech*, 566 F.3d at 1345). The Federal Circuit has held that "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc.*, 2018 WL 4692486, at *3 n.1. But the Fifth Circuit has clarified that "the availability of the compulsory process 'receives less weight when it has not been alleged or shown that any witness would be unwilling to testify.'" *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th

625, 630–31 (5th Cir. 2022) (quoting *Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488 (6th Cir. 2016)).

Google contends that this factor favors transfer because "two key prior artists, one key prior art company, and one witness with potential knowledge about the licensing of the '215 Patent are located in N.D. Cal." ECF No. 32 at 3–4. First, Google points to Jason Waldman, named inventor of U.S. Patent Application No. 2011/0199479 and alleged prior artist, as being in the NDCA. *Id.* at 4 (citing ECF No. 32-6). Second, Google argues that because the Waldman application was assigned to Apple, Inc., Apple is a relevant "prior art assignee" in the NDCA. *Id.* at 8.  Third, Google lists Erick Tseng, named inventor of U.S. Patent No. 8,698,843 and alleged prior artist, as being located in the NDCA. *Id.* at 4. Fourth and finally, Google lists Kevin Zilka, a manager of Oso IP, LLC, an entity with allegedly potential ties to Rafqa. *Id.* Google contends that Mr. Zilka is located in the NDCA. *Id.* In support of the location of all these third-party witnesses, Google yet again relies on a declaration of Stacy Yae. *See* ECF No. 32-2. Other than the location of Mr. Zilka, Ms. Yae does no investigation into the current location of the two prior artists and merely relies on the locations listed on the face of the application and patent. *See generally id.* Given that the Court finds Ms. Yae not credible for the reasons identified above, the Court will not weigh these two prior artists in favor of transfer. The Court, however, will weigh Mr. Zilka and Apple's location in favor of transfer. As to Mr. Zilka, Rafqa does not dispute that Mirai is represented by Mr. Zilka, a third party identified by Google, or that Mr. Zilka is located in the NDCA. *See generally* ECF No. 49. As to Apple, Rafqa does not dispute Apple being located in the NDCA. *See generally id.*

Rafqa responds that this factor is neutral as to transfer to the NDCA. ECF No. 49 at 13. Rafqa first argues that because Google does not establish that the third parties that it relies on are

unwilling, the Court cannot consider them. *See id.* But the Court has repeatedly rejected this argument before and found that the Federal Circuit has held that, under Fifth Circuit law, "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *See, e.g.*, *Motion Offense, LLC v. Google LLC*, No. 6:21-cv-00514, Dkt. No. 86 at 8 (W.D. Tex. May 25, 2023). Under the assumption that the witness is presumed unwilling, Rafqa then argues that "identified a number of former employees in this District that appear to possess relevant information." ECF No. 49 at 13. Specifically, Rafqa points to Bilawal Sidhu, former Senior Product Manager, Immersive View Google Maps, and Syamantak Kumar, former Google software engineer ARCore applications. *Id.* Although Google contends that these two former Google employees are not relevant because neither worked on the accused product (ECF No. 51 at 4 & n.3), for the reasons stated above in regard to Mr. Tan, Google has erroneously narrowed the scope of relevant accused technology in this case. Thus, the Court finds that these two former Google employees are relevant and located in this District.

In sum, Google has identified two relevant third-party witnesses that the NDCA can compel, and Rafqa has identified two relevant third-party witnesses that this District can compel. Accordingly, the Court finds this factor is neutral as to transfer.

### iii.    *The Relative Ease of Access to Sources of Proof*

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019). "[T]he question is *relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs

in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) (citing *In re Genentech*, 566 F.3d 1388, 1345 (Fed. Cir. 2009)).

According to Google, relevant documents about the accused feature were primarily created and maintained in N.D. Cal., where employees working on those features created and maintained them. ECF No. 32 at 6 (citing Tan Declaration ¶ 10 ("as a matter of Google practice, documents about its products and services are normally created and maintained by the employees working on those products and services.")). Google contends that this factor weighs heavily in favor of transfer because "many more employees with knowledge relevant to this litigation are based in N.D. Cal. (eleven identified employees) than W.D. Tex. (one identified employee), and, accordingly, the ease of access to the relevant documents that they created and maintain support transfer to N.D. Cal." *Id.* at 7.

Rafqa responds that this factor weighs against transfer because Google "wrongly double-counts party witnesses by equating them with sources of proof." ECF No. 49 at 13. As to Rafqa's sources of proof, Rafqa explains that it "has electronic and paper records in Texas." ECF No. 49 at 13. Rafqa also argues that "its prosecution counsel for the asserted patent and manager of Mirai, which funded prosecution" has electronic and paper records in Texas—including business and patent prosecution files. *Id.* According to Rafqa, "[t]hese physical records are ***stored in Texas***, a short drive from this Court." *Id.*

In reply, Google argues that Rafqa's argument that it stores "records" in Waco is "unsupported" because "Mr. Gordon's affidavit states only that he keeps 'records' in Frisco, which is not in this District; nor does that affidavit state what those 'records' are." ECF No. 51 at 4. And as for Mr. Caldwell and Mirai's records, Google explains that "their records are kept in Dallas, which is also not in this District." *Id.*

The Court finds that Google's primary contention for why there are more relevant sources of proof in the NDCA is because of Mr. Tan's declaration that there are more relevant party witnesses in the NDCA working on the accused features. Critically, however, because Mr. Tan's declaration and testimony have been struck as unreliable for the reasons explained above, the Court finds that Google has not shown there are indeed more sources of proof in the NDCA. As identified above, the Court finds that there is only one relevant willing witness located in the NDCA remaining—Mr. Tan. By contrast, Rafqa has identified five Google employee witnesses in this District with relevant information. Because the Federal Circuit has held that it is "error" to not also consider the location of document custodians and where documents are created and maintained, *WAG Acquisition, L.L.C. v. Google LLC*, 2022 WL 9569437, at *4 (W.D. Tex. Oct. 5, 2022), the location of more relevant Google document custodians in this District weighs against transfer. But the Court also finds that the location of Rafqa's documents near this District to also weigh against transfer.

Regardless of the Court's previous striking of the Tan Declaration, the Court finds that Google's arguments are based on conjecture rather than evidence. The Tan declaration only states that, as a general practice, documents "are normally created and maintained by employees working on those products and services." *See* ECF No. 32-1. It does not identify actual documents, let alone any located or even "maintained" in NDCA. *See* ECF No. 35-3 ¶ 11. Google's argument is that documents in the NDCA likely exist because it identified employees allegedly located there. *See* ECF No. 51 at 3–4. The Fifth Circuit rejected that argument in *Defense Distributed*. *See* 30 F.4th at 434 (stating expression that sources likely exist insufficient). It held that this factor "requires an actual showing of the existence of relevant sources of proof, not merely an expression that some sources likely exist in the prospective forum." *Id.*

When most of the evidence is electronic and equally accessible in either forum, this factor weighs against transfer. *In re Planned Parenthood*, 52 F.4th at 630 ("The district court first concluded that the private interest factors weigh against transfer. It found that the vast majority of the evidence was electronic, and therefore equally accessible in either forum."). Ultimately, the Court finds that most of the relevant documents that are identified by the parties appear to be electronic. Thus, under *In re Planned Parenthood*, this factor does not have as much bearing on whether this Court transfers this case as the other factors herein do. *See id.* In conclusion, the Court finds that this factor slightly weighs against granting transfer to the NDCA.

### iv.   *All Other Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive.*

When considering the private interest factors, courts must also consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). "[W]here there is a co-pending litigation . . . involving the same patent-in-suit, . . . pertaining to the same underlying technology and accusing similar services, . . . the Federal Circuit cannot say the trial court clearly abuses its discretion in denying transfer." *In re Vistaprint Ltd.*, 628 F.3d at 1346 n.3.

Google contends that "there are no practical problems that prevent transfer to N.D. Cal." ECF No. 32 at 10. According to Google, "[n]either W.D. Tex. nor N.D. Cal. has experience with the asserted '215 Patent, Rafqa Star has not filed any other suits in this District, and this case is

still in the early stages of litigation." *Id.* Thus, Google contends that this factor is neutral. *Id.* at 11. Rafqa agrees. ECF No. 49 at 15.

The Court agrees with the parties and finds that this factor is neutral.

## B. The Public Interest Factors

### i. *Administrative Difficulties Flowing from Court Congestion*

This factor concerns "whether there is an appreciable difference in docket congestion between the two forums." *In re Adobe Inc.*, 823 Fed. App'x 929, 932 (Fed. Cir. 2020). It considers the "[t]he speed with which a case can come to trial and be resolved." *In re Genentech, Inc.*, 566 F.3d at 1347. In this analysis, court congestion is considered "the most speculative" factor, and when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors." *Id.*

In its Motion, Google contends that "at most, this factor should be given neutral weight.*"* ECF No. 32 at 11. Rafqa responds that this factor weighs against transfer. ECF No. 49 at 14. But the Federal Circuit recently determined that "it was a clear abuse of discretion [for this Court] to accord this factor any weight" where "[i]t appears undisputed that [the patentee] is not engaged in product competition in the marketplace and is not threatened in the market in a way that, in other patent cases, might add urgency to case resolution and give some significance to the time-to-trial difference." *See In re Google LLC*, 58 F.4th 1379, 1383 (Fed. Cir. 2023). Because there is no evidence that Rafqa is engaged in "product competition in the marketplace," the Court finds that this factor is neutral even though the Court would have typically weighed this factor at least slightly against transfer. *See id.*

### ii. *Local Interest in Having Localized Interests Decided at Home*

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in patent cases "are not a fiction."

*In re Samsung Elecs. Co.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021). "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-CV-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit.*'" *In re Apple*, 979 F.3d at 1344 (emphasis in original) (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)). Courts should not heavily weigh a party's general contacts with a forum that are untethered from the lawsuit, such as a general presence. *Id.* Moreover, "little or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation." *In re Juniper Networks, Inc.*, 14 F.4th at 1320 (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)). To determine which district has the stronger local interest, the Court looks to where the events forming the basis for infringement occurred. *Id.* at 1319.

Google contends that this factor weighs in favor of transfer because "Google designed most of the accused functionality in N.D. Cal., and its personnel, documentary records, and ongoing activities relating to the design, development and operation of the accused functionality are primarily there." ECF No. 32 at 12. According to Google, the Court should not accord any weight to Rafqa presence in this District because it "was only recently formed in Texas on February 10, 2020, and its Texas office address is a 'virtual office.'" *Id.* Google asserts that Rafqa's presence in this District is merely recent and ephemeral. *Id.*

Rafqa responds that this factor does not favor transfer because "[p]ublic records show that this district was one of the first places Google began testing and development of its Live View and Street View features, which are integral parts of the Accused Instrumentalities." ECF No. 49 at 14. According to Rafqa, Google also admits work on the accused products occurred in the WDTX. *Id.* (citing ECF No. 32-1 at 7). Rafqa asserts that "Google completely discounts the fact Rafqa' sole place of business is in Texas." *Id.*

Considering all the above facts, the Court finds that on balance this factor is neutral with regard to transfer. First, for the reasons explained above, the Court has found that there are more relevant Google employees located in this District than in the NDCA. Google cannot reasonably dispute that there is a local interest in this District because of the work of its employees on the accused products in this District. Second, as the Court discovered with the case of Ms. L'Ecuyer, Google's work on the accused product occurs across the country. Google's infringement and employees are located nationwide. The Fifth Circuit has aptly directed district courts what to do in such situations: where "defendants and the witnesses are located across the state and across the country[,] . . . this is not the sort of localized case where the citizens of [transferee venue] have a greater 'stake' . . . ." *In re Planned Parenthood*, 52 F.4th at 632. As explained above, Mr. Tan testified that no testing of ARWN was performed in Texas. ECF No. 72 at 31:8–10. But afterward he admitted that Mr. Wang participated in testing in Austin. *Id.* at 33:7–12. Mr. Tan admitted that Mr. Wang was one of the individuals responsible for signing off on testing milestones for ARWN. *Id.* at 33:1–14. Google is therefore wrong that there is not a local interest in this case in WDTX. For the above reasons, the Court finds that the local interest factor is neutral in this case.

### iii.    *Familiarity of the Forum with the Law That will Govern the Case*

Google and Rafqa agree that this factor is neutral; both forums are familiar with the law that will govern this case. ECF No. 32 at 13; ECF No. 49 at 15. The Court agrees.

  *iv.*  ***Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law***

   Google and Rafqa agree that this factor is neutral—there are no potential conflicts here. ECF No. 32 at 13; ECF No. 49 at 15. The Court agrees.

**V.**  **CONCLUSION**

   Having considered the private and public interest factors, Google has not shown that a single factor weighs in favor of transfer. Accordingly, Google has failed to meet its burden to show that the NDCA is a *clearly* more convenient venue. *Volkswagen II*, 545 F.3d at 314 n.10. Google's Motion is therefore **DENIED**.

   SIGNED this 17th day of August, 2023.

                  ALAN D ALBRIGHT
                  UNITED STATES DISTRICT JUDGE